UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **LOUIS CAMPHOR, JR.,** | : | |
| Plaintiff, | : | **CIVIL ACTION NO. 20-2126** |
| v. | : | **(JUDGE MANNION)** |
| **CONTRACTOR TRANSPORT, LLC.,** | : | |
| | : | |
| Defendant. | | |

## MEMORANDUM

Presently before the court is defendant's motion for summary judgment. (Doc. 19). The defendant filed a brief in support, (Doc. 20), and a statement of material facts, (Doc. 21). The plaintiff filed a brief in opposition, (Doc. 23). The defendant then filed a reply brief, (Doc. 24). The matter is fully briefed and is now ripe for disposition.

### I. BACKGROUND[1]

Plaintiff, Louis Camphor, Jr. ("Camphor"), was hired by the defendant, Contractor Transport, LLC. ("Contractor"), in 2018. Camphor is a seventy-five-year-old African American man. On May 18, 2019, Camphor was

---

[1] All facts are pulled from the statement of material facts, (Doc. 21), and the answer to the statement of material facts, (Doc. 22).

assigned to haul water to Altoona Water Authority with another Contractor employee, Larry Lockoff ("Lockoff"). Lockoff is a sixty-two or sixty-three-year-old Caucasian man. During the trip on May 18, 2019, the trucks approached a steep hill with signs indicating that commercial vehicles were required to pull off of the road and shift their vehicles into a lower gear before descending the grade. Neither Camphor nor Lockoff pulled their truck over before descending the grade. Both vehicles proceeded to descend the grade. Shortly after beginning their descent, a Pennsylvania State Police ("PSP") vehicle pulled over the lead truck driven by Lockoff. Camphor pulled over behind Lockoff because he did not know the route and was following Lockoff. After pulling over for a period of time, a second PSP vehicle arrived on scene and wrote Camphor a ticket for failure to stop before descending the grade and driving at a speed of fifty miles per hour in a twenty miles per hour zone. After receiving the citations, both plaintiff and Lockoff proceeded back on their route. They filled their trucks with water and arrived at Altoona Water Authority. At Altoona Water Authority, the trucks weighed their vehicles, provided samples of the water they were hauling, and left at approximately 12:30pm.

After completing the trip, plaintiff arrived back at Contractor Supply and informed his supervisor, Tom Harris, that he received a citation. On May 19, 2019, Camphor met with Scott Beatty and Lorin Moore to go over the citation.

Contractor then received an email on May 20, 2019 at 8:30am from John Wyandt at Altoona Water Authority stating that surveillance footage and driver manifests indicated that a Contractor truck struck and damaged a guardrail. Contractor believed Camphor caused the accident and initiated a meeting with him on May 20, 2019 after his shift. During that meeting with Harris, Beatty, and Moore, plaintiff was informed his employment was being terminated.

## II. STANDARD OF REVIEW

Summary judgment is appropriate if the pleadings, the discovery [including, depositions, answers to interrogatories, and admissions on file] and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Turner v. Schering-Plough Corp., 901 F.2d 335, 340 (3d Cir. 1990). A factual dispute is genuine if a reasonable jury could find for the non-moving party, and is material if it will affect the outcome

of the trial under governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Aetna Cas. & Sur. Co. v. Ericksen, 903 F. Supp. 836, 838 (M.D. Pa. 1995). At the summary judgment stage, the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249; see also Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (a court may not weigh the evidence or make credibility determinations). Rather, the court must consider all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007).

To prevail on summary judgment, the moving party must affirmatively identify those portions of the record which demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323-24. The moving party can discharge the burden by showing that on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party. In re Bressman, 327 F.3d 229, 238 (3d Cir. 2003); see also Celotex, 477 U.S. at 325. If the moving party meets this initial burden, the non-moving party must do more than simply show that there is some metaphysical doubt as to material facts, but must show sufficient evidence to support a jury verdict in its favor. Boyle v. County of Allegheny,

139 F.3d 386, 393 (3d Cir. 1998) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)).  However, if the non-moving party fails to make a showing sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of proof at trial, Rule 56 mandates the entry of summary judgment because such a failure necessarily renders all other facts immaterial. Celotex Corp., 477 U.S. at 322-23; Jakimas v. Hoffman-La Roche, Inc., 485 F.3d 770, 777 (3d Cir. 2007).

### III.   DISCUSSION

Plaintiff first asserts a violation of the Age Discrimination in Employment Act ("ADEA"). ADEA claims are evaluated under the burden shifting framework outlined in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). See Fasold v. Justice, 409 F.3d 178, 184 (3d Cir. 2005). Under McDonnell Douglas, the plaintiff bears the burden of proof as well as the initial burden of production and must first demonstrate a *prima facie* case of discrimination. Smith v. City of Allentown, 589 F.3d 684, 689 (3d Cir. 2009). To demonstrate a *prima facie* case, the plaintiff must show: "First, that the plaintiff is forty years of age or older;

second, that the defendant took an adverse employment action against the plaintiff; third, that the plaintiff was qualified for the position in question; and fourth, that the plaintiff was ultimately replaced by another employee who was sufficiently younger to support an inference of discriminatory animus." Id. (citing Potence v. Hazleton Area Sch. Dist., 357 F.3d 366, 370 (3d Cir. 2004)). "[W]here plaintiff is not directly replaced, the fourth element is satisfied if the plaintiff can provide facts which 'if otherwise unexplained, are more likely than not based on the consideration of impermissible factors.'" Willis v. UPMC Children's Hosp. of Pittsburgh, 808 F.3d 638, 645 (3d Cir. 2015) (citing Pivirotto v. Innovative Sys., Inc., 191 F.3d 344, 357 (3d Cir. 1999). The burden of showing a *prima facie* case is not intended to be onerous. Sempier v. Johnson & Higgins, 45 F.3d 724, 728 (3d Cir. 1995).

If the plaintiff establishes a *prima facie* case, the burden of production shifts to the employer to identify a legitimate non-discriminatory reason for the employment action. Id. at 690 (citing Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101, 1108 (3d Cir. 1997)). If the employer identifies a non-discriminatory reason for the adverse employment action, the burden of production returns to the plaintiff to demonstrate that the reason offered by the employers is merely pretextual. Id. (citing Starceski v. Westinghouse Elec. Corp., 54 F.3d 1089, 1095 n. 4 (3d Cir. 1995)).

The parties do not dispute the first three requirements of a *prima facie* case. The plaintiff is over forty years old, he was qualified for his position, and was terminated. In order to satisfy the fourth element, plaintiff must allege he was replaced by a sufficiently younger employee to support an inference of discriminatory animus. Smith, 589 F.3d at 689. Plaintiff states that he is unaware of a replacement younger than him. Therefore, he seeks to satisfy the fourth element by providing facts, "which 'if otherwise unexplained, are more likely than not based on the consideration of impermissible factors.'" Willis, 808 F.3d at 645 (internal citations omitted). Camphor argues that Lockoff received the same citation as he did for failure to come to a stop on the downgrade. However, Lockoff only received a warning and was not terminated. Plaintiff offers Lockoff as a similarly situated employee that received more favorable treatment for no other reason than his younger age. See Barber v. CSX Distribution Servs., 68 F.3d 694, 699 (3d Cir. 1995) ("There is no magical formula to measure a particular age gap and determine if it is sufficiently wide to give rise to an inference of discrimination."); Id. (citing Sempier v. Johnson & Higgins, 45 F.3d 724, 729 (3d Cir. 1995) ("[W]hile '[d]ifferent courts have held ... that a five year difference can be sufficient, … a one year difference cannot.'")

Camphor argues that he establishes a *prima facie* case based upon his termination meeting. During this meeting, the parties allege contradictory discussions took place. During Camphor's deposition, he states that his termination meeting discussed only his citation and nothing about the guardrail incident. (Doc. 22, ¶27). Camphor claims that he only learned about the guardrail incident after filing with the EEOC. To the contrary, Contractor offers the affidavit of Lorin Moore to claim that Camphor was informed during his termination meeting that the reason for dismissal was due to his failure to inform Contractor of the damage he caused at Altoona Water Authority. Contractor's personnel record for Camphor does not indicate the reason for termination. Although the parties dispute the reason for Camphor's termination, plaintiff establishes a *prima facie* case. A reasonable jury could find he was terminated based upon his age when comparing the different treatment Lockoff received.

Next, Contractor offers a legitimate non-discriminatory reason for Camphor's termination in that he struck a guardrail at Altoona Water Authority and failed to inform his employer. Contractor made this decision based upon an email from Altoona Water Authority indicating one of Contractor's trucks damaged a guardrail and included video footage of the incident. Contractor offers the affidavit of Lorin Moore to explain Camphor

was terminated based upon the incident at Altoona Water Authority and the failure to report it.

Camphor must proffer "'evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons … or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.'" In re Trib. Media Co., 902 F.3d 384, 402 (quoting Fuentes v. Perskie, 32 F.3d 759, 762 (3d Cir. 1994)). Camphor casts doubt upon Contractor's offered legitimate non-discriminatory reason with several items. First, he argues he was never told that this was the reason for his termination. Camphor explained that he was told his termination was due to the traffic citation and he was never informed of the incident at Altoona Water Authority. (Doc. 22, ¶27). Second, the paperwork at Altoona Water Authority indicates the same time of pumping for both Camphor and Lockoff. The video footage reveals little to nothing in terms of determining who was operating the vehicle on the day in question if the footage even depicts the guardrail being damaged. (Doc. 26). Camphor's truck was examined the day after the incident and no damage was discovered. (Doc. 22, ¶19). These items raise doubt as to the true motivation behind Contractor's termination of Camphor.

Plaintiff next asserts a Title VII discrimination claim. A Title VII claim for racial discrimination follows the burden shifting framework of McDonnell Douglas. Jones v. Sch. Dist. of Philadelphia, 198 F.3d 403, 406 (3d Cir. 1999). A Title VII discrimination claim has a similar structure to an ADEA discrimination claim. Plaintiff must assert that he was (1) a member of a statutorily protected class; (2) was qualified for the position at issue; (3) was aggrieved by an adverse employment action; and (4) a similarly situated person who was not a member of his protected class was treated more favorably, or there are other circumstances giving rise to an inference of discrimination. Jackson v. University of Pittsburgh, 826 F.2d 230, 233 (3d Cir. 1987).

First, plaintiff must establish a *prima facie* case. The parties agree to the first three elements of the *prima facie* elements. For the fourth element, plaintiff alleges that Lockoff, a similarly situated employee that is not a member of a protected class, was treated more favorably based upon his race. While the defendant argues that Lockoff was not treated more favorably because Lockoff did not cause the damage at Altoona Water Authority and fail to report it, the parties dispute the underlying reason for Camphor's termination. Camphor contends that his termination was based upon the traffic citation, the same citation Lockoff received. Camphor presents his

deposition testimony about the conversations that took place during his termination meeting, the blurry video footage, the paperwork at Altoona Water Authority, and the lack of damage on his company vehicle to create a genuine issue of material fact in regard to the true reason for his termination.

Second, as the court has previously explained pertaining to the ADEA claim, Contractor has offered a legitimate non-discriminatory reason for Camphor's termination based upon the accident at Altoona Water Authority and his failure to report the accident.

Lastly, Camphor has cast doubt on the employer's legitimate non-discriminatory reason based upon the paperwork at Altoona Water Authority, the blurry video footage, and the lack of damage discovered on his vehicle as previously discussed under the ADEA claim. As such, plaintiff has put forward evidence to disbelieve the employer's articulated legitimate non-discriminatory reason.

## IV.     CONCLUSION

The court will deny the defendant's motion for summary judgment, (Doc. 19).

An appropriate order will follow.

*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: May 23, 2023**
20-2126-01